# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MARK ANTHONY HENDERSON, | : | |
| Plaintiff, | : | No. 3:21-cv-10 (SRU) |
| | : | |
| v. | : | |
| | : | |
| KAYLA B. LOZADA, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Mark Anthony Henderson, currently incarcerated at Corrigan-Radgowski Correctional Center and proceeding *pro se*, filed the instant complaint under 42 U.S.C. § 1983 against three defendants: Nurse Kayla B. Lozada, Nurse Supervisor Kara Phillips, and Medical Grievance Coordinator Janine Brennan. Henderson principally contends that the defendants were deliberately indifferent to his serious medical needs, and requests damages and injunctive relief.

## I.     Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Although detailed allegations are not required, the complaint must include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.  Conclusory allegations will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## II.    Allegations

Henderson was diagnosed with osteoarthritis of his lumbar spine and anterior and anterolateral spurring of the L3 and L4 vertebrae, which causes severe, ongoing pain that awakens him during the night.  *See* Compl., Doc. No. 1, at 7 ¶ 1; Doc. No. 1-1, at 2.  On July 31 and August 3, 2020, Henderson submitted a request for sick call treatment for his back pain.  *See* Compl., Doc. No. 1, at 7 ¶ 2.  On August 4, 2020, Nurse Lozada returned his request with a notation that he had been added to the nurse sick call list.  *Id.*  On August 19, 2020, having not received any sick call medical treatment and still in pain, Henderson submitted a second sick call request.  *See id.* at ¶ 4.  The following day, he received the request back with a notation that he was on the nurse sick call list.  *See id.*

On August 22, 2020, Henderson missed his morning dose of gabapentin pain medication and was called to the medical unit to receive the medication.  *See id.* at ¶ 5.  While there, Henderson told Nurse Lozada that he had yet to be called for sick call despite his two written requests.  *See id.* at ¶ 6.  Nurse Lozada responded that Thursday, August 27 was the sick call day for Henderson's housing unit, and that she would call him on that date.  *See id.* at ¶ 6.

Henderson, however, was not called for sick call that day.  *See id.* at ¶ 7.

Still experiencing severe pain, Henderson wrote to Nursing Supervisor Phillips on September 2, 2020, explaining that he had not received medical treatment for his severe lower back pain symptoms in over thirty days.  *Id.* at ¶ 9; Doc. No. 1-1, at 11.  The next day, Henderson filed a medical grievance regarding Nurse Lozada.  Compl., Doc. No. 1, at ¶ 17; Doc. No. 1-1, at 30.

On September 10, 2020, Henderson received his request back with a note from Phillips that they were trying to hire additional staff.  Compl., Doc. No. 1, at ¶ 10.  Phillips did not instruct any of her subordinates to treat Henderson, and Henderson continued to endure pain.  *Id.* at ¶¶ 10, 11.  A week later, on September 17, 2020, Henderson filed a medical grievance regarding Phillips for her failure to provide timely and adequate sick call medical treatment.  *See id.* at ¶ 11.

On September 23, 2020, as Henderson was waiting to receive his morning medication, he spoke with Phillips.  *Id.* at ¶ 12.  He inquired when he would be seen for his sick call medical treatment regarding his lower back pain symptoms, and explained that he had been waiting 52 days to receive medical treatment.  *Id*. at ¶ 13.  Nurse Phillips advised Henderson to notify the Commissioner of the issue.  *Id.*  That same day, Henderson submitted a third request for medical treatment regarding his lower back pain.  *Id*. at ¶ 14.  Nurse Lozada responded the following day, noting that his name was added to the nurse sick call list and that "Tylenol, motrin, and muscle rub are available on commissary."  *Id*.

On October 8, 2020, Henderson was finally seen and treated for his lower back pain by an unidentified male nurse.  *See id.* at ¶ 15.  The nurse offered only acetaminophen or ibuprofen

for his lower back pain symptoms, which Henderson declined because the medications upset his stomach.  *Id.* at ¶ 16.  Henderson was placed on the doctor sick call list, but has not yet been seen.  *Id.*

Medical Grievance Coordinator Brennan was responsible for logging Henderson's grievances and processing them for evaluation and response.  *Id.* at ¶ 17.  On October 7, 2020, she returned Henderson's grievances regarding Nurse Lozada and Phillips without processing them.  *Id.* at ¶ 18.  Henderson re-submitted the grievances, which Brennan denied on October 20, 2020 on the ground that Henderson was seen in sick call on October 8, 2020.  *See id.* at ¶ 19. Henderson filed a grievance appeal dated October 20, 2020 regarding both Lozada and Phillips; he received no reply other than a notification that he had exhausted his administrative remedies. *Id.* at ¶ 20.

On October 22 and November 24, 2020, he filed grievances and appeals regarding Brennan's failure to process his grievances.  *See id.* at ¶¶ 21–27.  Those grievances, too, were improperly processed by Brennan.  *See id.*

## III.   Analysis

### A.   Deliberate Indifference to Medical Needs

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs.  *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a deliberate indifference claim, Henderson must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  The standard embodies both an objective and subjective element.  *See id.* at 183.  To meet the objective element, the alleged deprivation of

4

adequate medical care must be "sufficiently serious." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted). That inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).

Where the defendants allegedly failed to provide any treatment for a prisoner's medical condition, the focus of the court's inquiry is whether the medical condition is sufficiently serious. *Id*. at 280. The Second Circuit has delineated several factors that are "highly relevant" to that question, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up). In addition, a sufficiently serious medical condition exists when, if left untreated or neglected for a long period of time, it will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted).

Where, on the other hand, the defendants allegedly provided medical treatment that was inadequate, the objective inquiry is narrower. *See Salahuddin*, 467 F.3d at 280. For instance, if the prisoner is receiving ongoing medical care and there was an "unreasonable delay or interruption in that treatment," the inquiry focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id*. (citation omitted).

To meet the subjective element, the defendants must have been "subjectively reckless"— that is, they must have been aware that the prisoner faced a substantial risk to his or her health or safety and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Spavone*,

719 F.3d at 138.  The defendants "need only be aware of the risk of harm, not intend harm," and

"awareness may be proven 'from the very fact that the risk was obvious.'"  *Spavone*, 719 F.3d at

138 (quoting *Farmer*, 511 U.S. at 842).  Such recklessness entails more than mere negligence,

*Salahuddin*, 467 F.3d at 279–80, and "an official's failure to alleviate a significant risk that he

should have perceived but did not" does not constitute deliberate indifference, *see Farmer*, 511

U.S. at 838.

In his complaint, Henderson alleges that he suffers from osteoarthritis of the lumbar

spine, which causes severe lower back pain that precludes him from sleeping through the night.

Henderson further alleges that he submitted multiple complaints concerning his back pain, the

first one being on July 31, 2020, and that he was not medically evaluated until over two months

later, on October 7, 2020.  Moreover, the complaint indicates that the nurse only offered

acetaminophen and ibuprofen at the October 7, 2020 appointment, which Henderson declined

because of the medications' side effects, and that Henderson has yet to be seen by a physician as

of December 31, 2020, the date he signed the complaint, despite the nurse's referral.

Considering the foregoing allegations, and drawing all reasonable inferences in favor of

Henderson and construing his complaint liberally, Henderson has plausibly pled the existence of

a sufficiently serious deprivation of medical care.  *See Diaz v. Hanna*, 2020 WL 6453936, at *5,

*6 (D. Conn. Nov. 3, 2020) (holding that allegations of neck, spinal, and back injuries, coupled

with the prison's failure to provide the plaintiff with a non-standard mattress, were sufficient to

satisfy the objective prong of the deliberate indifference test at the initial review stage); *Riddick

v. Maurer*, 2016 WL 7422634, at *3 (D. Conn. Dec. 22, 2016) (concluding that complaints of

severe back pain and degenerative vision were sufficient to support the objective component of

6

the deliberate indifferent test); *Faraday v. Lantz*, 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005) (denying summary judgment to a defendant with respect to a deliberate indifference claim when the plaintiff had, among other things, "persistently complained of lower back pain caused by herniated, migrated discs [and] sciatica"). I therefore conclude that Henderson has adequately pleaded the objective element of the deliberate indifference test.

With respect to the subjective element, the complaint plausibly attributes culpable intent to Nurse Lozada and Phillips. In particular, the complaint alleges that Nurse Lozada and Phillips returned the requests for treatment, which described his back pain, on August 4, 2020 and on September 10, 2020, respectively. The complaint further alleges that Henderson told Nurse Lozada and Phillips again that he had yet to be treated for his back pain on August 22, 2020 and September 23, 2020, respectively. Despite his multiple complaints, Henderson was not evaluated by a nurse until October 2020 and has yet to see a physician. In my view, those allegations raise a reasonable inference that Nurse Lozada and Phillips were aware of a substantial risk that his failure to treat Henderson's back pain would cause Henderson serious harm and thus acted with deliberate indifference. The deliberate indifference claims against Lozada and Phillips will therefore proceed.

B.    Failure to Process Grievances

Henderson further alleges that Brennan failed to properly process his grievances. The failure to comply with an administrative directive, however, does not on its own give rise to a claim under section 1983. *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011); *Osuch v. St. John,* 2018 WL 5778243, at *4 (D. Conn. Nov. 2, 2018) ("Because a failure to follow a Department of Correction directive does not give rise to a section 1983 claim, any claim based

on St. John's alleged violation of Administrative Directives 8.1 and 8.5 is dismissed.").

Moreover, Connecticut's grievance policies do not "create federally protected due process

entitlements to specific state-mandated procedures." *See Riddick v. Semple*, 731 F. App'x 11, 13

(2d Cir. 2018) (internal citation omitted) (explaining that a prisoner's argument that "defendants

violated his due process rights by restricting his access to the prison's grievance procedures

confuses a state-created procedural entitlement with a constitutional right").  As the *Riddick*

Court explained, "neither state policies nor state statutes . . . create federally protected due

process entitlements to specific state-mandated procedures." *Id*. at 13 (citation omitted).  For

that reason, Henderson's claim against Brennan is **dismissed** under 28 U.S.C. § 1915A(b)(1).

**CONCLUSION**

The claim against Brennan is **DISMISSED** without prejudice under 28 U.S.C. §

1915A(b)(1).  The case will proceed on the deliberate indifference to medical needs claims

against Lozada and Phillips in their individual and official capacities.

The court enters the following additional orders.

(1)      **The Clerk shall** verify the current work address for Lozada and Phillips with the

Department of Correction Office of Legal Affairs, mail a waiver of service of process request

packet containing the Complaint and this Order to each defendant at the address provided within

**twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on

the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk

shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in

her individual capacity and the defendant shall be required to pay the cost of such service.

(2)      **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Complaint on defendants Lozada and Phillips in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)      T**he Clerk shall** send the plaintiff a copy of this Order.

(4)      **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)      The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)      If the plaintiff changes his address at any time during the litigation of this case,

Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

So ordered.

Dated at Bridgeport, Connecticut, this 19th day of April 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

10