UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK ANTHONY HENDERSON,
         Plaintiff,                                    No. 3:21-cv-10 (SRU)

         v.

KAYLA B. LOZADA, et al.,
         Defendant.

RULING ON MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

Mark Anthony Henderson, currently confined at Corrigan-Radgowski Correctional

Center ("Corrigan") and proceeding *pro se*, moves for a temporary restraining order and

preliminary injunction.  Henderson seeks preliminary injunctive relief in the form of orthopedic

medical treatment for his lower back pain and, in particular, an examination by an orthopedic

specialist.  The defendants oppose the motion on the grounds that Henderson has failed to

establish (a) that he is likely to succeed on the merits of his Eighth Amendment claims or (b) that

he will face irreparable harm in the absence of the requested relief.

For the reasons that follow, I agree with the defendants that Henderson has failed to carry

his burden of clearly establishing the likely merit of his claims.  Henderson's motion for a

temporary restraining order and preliminary injunction (doc. no. 4) is therefore **denied**.

I.       **Standard of Review**

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not

be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Grand

River Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up).  In the

Second Circuit, the same legal standard governs motions for a temporary restraining order and a

preliminary injunction.  *See Fairfield Cty. Med. Ass'n v. United Healthcare of New England*, 985

F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd as modified sub nom. Fairfield Cty. Med. Ass'n v.*

*United Healthcare of New England, Inc.,* 557 F. App'x 53 (2d Cir. 2014).  To prevail on such a

motion, the movant must demonstrate "that he is likely to succeed on the merits, that he is likely

to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in

his favor, and that an injunction is in the public interest."  *Glossip v. Gross*, 576 U.S. 863, 876

(2015) (cleaned up).  To demonstrate irreparable harm, the movant must further establish "an

injury that is neither remote nor speculative, but actual and imminent" and "that cannot be

remedied by an award of monetary damages."  *Shapiro v. Cadman Towers, Inc*., 51 F.3d 328,

332 (2d Cir. 1995) (cleaned up).

Where, as here, a movant seeks a "mandatory preliminary injunction that alters the status

quo by commanding some positive act," rather than a "prohibitory injunction seeking only to

maintain the status quo," the burden of proof is more stringent.  *Cacchillo v. Insmed, Inc.,* 638

F.3d 401, 406 (2d Cir. 2011).  In that instance, a movant must demonstrate a "clear" or

"substantial" likelihood of success on the merits.  *See Doninger v. Niehoff*, 527 F.3d 41, 47 (2d

Cir. 2008).

An evidentiary hearing is generally required on a motion for a preliminary injunction,

except when there are no factual disputes that need to be resolved.  *See Charette v. Town of*

*Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the

relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the

case . . . or when the disputed facts are amenable to complete resolution on a paper record");

*Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) ("The existence of factual disputes necessitates an

evidentiary hearing . . . before a motion for a preliminary injunction may be decided.") (cleaned

up).  Upon review of the record, I conclude that oral testimony and argument are not necessary in this case.

**II.     Facts**[1]

In January and August 2017, Henderson received x-rays of his lumbar spine, which displayed mild degenerative disc disease and osteoarthritis of the lumbar spine with some arthritic calcium growths (spurs) at vertebral bodies L3 and L4.  *See* Doc. No. 13-1, at ¶¶ 5, 6; Doc. No. 1-1, at 2–3.  According to Dr. Freston, complete pain alleviation is not a "realistic treatment goal" for spinal osteoarthritis, and medicinal treatment may include Neurontin, that is, Gabapentin; oral or topical anti-inflammatory, such as Motrin; topical analgesics, such as Lidoderm patches; and oral analgesics, such as Tylenol.  Doc. No. 13-1, at ¶ 25.  Non-medicinal care may include stretching exercises or warm compresses.  *Id*. at ¶ 26.

Around June 2019, Henderson submitted a medical request seeking an increase in his pain medication, explaining that he woke up in the early morning with severe back pain.  *See* Doc. No. 13-1, at ¶ 7; Doc. No. 14, at 119.  At the time, Henderson was prescribed one 600 milligram Gabapentin tablet, taken twice a day, for a total daily prescription of 1,200 milligrams. *See* Doc. No. 13-1, at ¶ 7; Doc. No. 14, at 120.  Henderson's Gabapentin dosage was thereafter doubled to 1,200 milligrams twice per day, for a total daily prescription of 2,400 milligrams.  *See* Doc. No. 13-1, at ¶ 8; Doc. No. 14, at 118.

On October 14, 2019, Henderson submitted another request for an increase in his Gabapentin dosage, claiming that he woke up around 3 a.m. with severe pain in his back, shoulder, and knees.  *See* Doc. No. 13-1, at ¶ 9; Doc. No. 14, at 113.  He met with a nurse on

---

[1] The following facts are drawn from the complaint and accompanying exhibits, Henderson's declarations in support of his motion, the declaration of Dr. Cary Freston, the DOC's Acting Regional Medical Director, and the medical records appended to the defendants' opposition.  Unless otherwise indicated, the facts are not in dispute.

October 18, 2019, and his dosage was increased to 1,600 milligrams, taken twice a day, for a total daily prescription of 3,200 milligrams.  Doc. No. 13-1, at ¶ 10, 11; Doc. No. 14, at 108.

On August 3, 2020, Henderson submitted a medical request, flagging that he was experiencing severe lower back pain that caused him to awaken at night.  *See* Doc. No. 13-1, at ¶ 14; Doc. No. 4-2, at ¶ 3.  He received a response on August 4, 2020 from Nurse Lozada, which reported that he had been added to the nurse sick call list.  Doc. No. 13-1, at ¶ 14; Doc. No. 14, at 97.  He submitted additional requests relating to his back pain on August 19, September 2, and September 23, 2020.  *See* Doc. No. 13-1, at ¶ 15; Doc. No. 14, at 83, 68; Doc. No. 4-2, at ¶ 3.  In a response dated September 24, 2020, Nurse Lozada reiterated that Henderson was on the sick call list and advised him that Tylenol, Motrin and a muscle rub cream were available at the commissary.  Doc. No. 13-1, at ¶ 15; Doc. No. 14, at 59.

Henderson was finally seen by a nurse on October 8, 2020.  *See* Doc. No. 13-1, at ¶ 16; Doc. No. 14, at 52–54; Doc. No. 4-2, at ¶ 4.  The nurse offered acetaminophen and Motrin, which Henderson declined because those medications upset his stomach.  *See* Doc. No. 13-1, at ¶ 16; Doc. No. 14, at 52–54; Doc. No. 4-2, at ¶ 3.  Henderson also remarked that neither the muscle rub cream nor the acetaminophen from the commissary provided relief.  *See* Doc. No. 13-1, at ¶ 16; Doc. No. 14, at 52–54.  The nurse referred Henderson to the doctor.  Doc. No. 13-1, at ¶ 16; Doc. No. 14, at 54.

On November 13, 2020, Dr. Feder ordered an x-ray of Henderson's lumbar spine.  Doc. No. 13-1, at ¶ 17; Doc. No. 14, at 39.  The x-ray indicated spurring on all vertebrae, which was most severe on L3 and L4, as well as disc space narrowing, some degenerative changes in the upper portions of both S1 joints, tissue stiffening, and mild inflammation.  Doc. No. 13-1, at ¶ 18; Doc. No. 14, at 37–38.  According to Dr. Freston, the x-ray demonstrated "nominal

progression over time of the expected degenerative process" in Henderson's lumbar spine, and

"nominal progression of degenerative changes" from the x-rays performed in 2017.  Doc. No.

13-1, at ¶ 23.  Dr. Freston further observed that the x-rays did not reveal any blown disc or

pinched nerve, which would cause more extensive nerve pain, and that the bone spurs remained

moderate.  *Id*. at ¶ 24.

On December 5, 2020, Henderson submitted another medical request, stating that he

continued to experience pain around five in the morning, particularly after cold nights.  *See* Doc.

No. 13-1, at ¶ 19; Doc. No. 14, at 36.  Nurse Lozada responded on December 6, 2020 that

Henderson was added to the nurse sick call list.  *See* Doc. No. 14, at 36.

On January 29, 2021, Henderson was seen by Nurse Tara Hood.  *See* Doc. No. 13-1, at ¶

21; Doc. No. 14, at 1–3.  At the appointment, Henderson noted that he experienced pain in the

early morning hours when his pain medication wore off.  *See* Doc. No. 13-1, at ¶ 21; Doc. No.

14, at 1–2.  He was able to bend and squat without issue during the examination.[2]  *See* Doc. No.

13-1, at ¶ 21; Doc. No. 14, at 3.  Nurse Hood prescribed Lidoderm patches, and educated

Henderson on the importance of stretching and flexibility for pain management and on the use of

warm compresses as part of his self-care routine.  *See* Doc. No. 13-1, at ¶ 21; Doc. No. 14, at 3.

According to Henderson's affidavit, Nurse Hood also informed him that he had an approved

appointment with an orthopedist for his lower back that was awaiting scheduling.  *See* Doc. No.

17, at 5 ¶ 7.

---

[2] Nurse Hood's notes also indicate that Henderson stated at the appointment that he completes 300 burpees—a type of exercise—every other day, that he does pull-ups in his cell, and that he was not presently experiencing any pain.  *See* Doc. No. 14, at 2.  Henderson disputes making those statements in his reply, asserting that he informed Nurse Hood that he *used* to perform burpees and pull-ups and that he cannot perform those exercises anymore in light of his pain.  *See* Doc. No. 17, at ¶¶ 4–5.  Because those facts are not material to my analysis, they need not be resolved at this juncture.

In her declaration, Dr. Freston opined that the medications that Henderson was prescribed were appropriate to treat his symptoms. *See* Doc. No. 13-1, at ¶ 33. Dr. Freston further opined that Henderson's history of complaints related to pain, along with his corresponding increases in Gabapentin dosage, suggest that additional dosage increases would have "limited impact," noting that, at 3,200 milligrams, Henderson was already in the "higher therapeutic window" for that medication. *Id*. at ¶ 31. Dr. Freston added that treatment with narcotics is not medically indicated, and that treatment with acetaminophen or Motrin would normally be offered. *Id*.

## III.   Discussion

As a preliminary matter, because the initial review order dismissed as without merit Henderson's claim against Medical Grievance Coordinator Janine Brennan for her alleged failure to process his grievances, it necessarily follows that the claim is not likely to succeed on the merits and thus cannot form the basis of any injunctive relief. I therefore do not further address the claim against Brennan in this ruling.

Turning to Henderson's Eighth Amendment claims, the complaint contends that the defendants' omissions following his August 3, 2020 medical request constituted deliberate indifference to his serious medical needs. In their opposition to the motion, the defendants argue that Henderson has failed to sufficiently demonstrate a likelihood of success on the merits of those claims. I agree.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a deliberate indifference claim, Henderson must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The standard embodies both an objective and

subjective element.  *See id*. at 183.  To meet the objective element, the alleged deprivation of adequate medical care must be "sufficiently serious."  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).  That inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).

Where the defendants allegedly failed to provide any treatment for a prisoner's medical condition, the focus of the court's inquiry is whether the medical condition is sufficiently serious. *Id*. at 280.  The Second Circuit has delineated several factors that are "highly relevant" to that question, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up).  In addition, a sufficiently serious medical condition exists when, if left untreated or neglected for a long period of time, it will "result in further significant injury or the unnecessary and wanton infliction of pain."  *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted).

Where, on the other hand, the defendants allegedly provided medical treatment that was inadequate, the objective inquiry is narrower.  *See Salahuddin*, 467 F.3d at 280.  For instance, if the prisoner is receiving ongoing medical care and there was an "unreasonable delay or interruption in that treatment," the inquiry focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  *Id*. (citation omitted).

To meet the subjective element, the defendants must have been "subjectively reckless"— that is, they must have been aware that the prisoner faced a substantial risk to his or her health or safety and disregarded that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Spavone*,

719 F.3d at 138.  The defendants "need only be aware of the risk of harm, not intend harm," and

"awareness may be proven 'from the very fact that the risk was obvious.'"  *Spavone*, 719 F.3d at

138 (quoting *Farmer*, 511 U.S. at 842).  Such recklessness entails more than mere negligence,

*Salahuddin*, 467 F.3d at 279–80, and "an official's failure to alleviate a significant risk that he

should have perceived but did not" does not constitute deliberate indifference, *see Farmer*, 511

U.S. at 838.

After considering the entire record before me, I conclude that Henderson has not

proffered sufficient evidence to carry his heavy burden.[3]  In his motion, Henderson asserts that

he suffers from chronic, severe pain due to his spinal osteoarthritis, and that the defendants have

denied him orthopedic medical treatment and medical care from his "designated medical

provider."  *See* Doc. No. 4-1, at 1–5.  Henderson elaborates in his declaration that he was not

evaluated by medical personnel for his lower back pain until over two months after he submitted

his medical request on August 3, 2020; that, when he was finally seen, the only medication that

he was offered was acetaminophen; and that he has yet to see a physician.  *See* Doc. No. 4-2, at ¶

4.

Those omissions, without more, do not clearly show that Henderson was likely deprived

of constitutionally adequate medical care.  Although he was not seen by a nurse for

approximately two months following his August 3, 2020 medical request, the medical records

indicate that Nurse Lozada promptly added him to the nurse sick call list on August 4, 2020.  *See*

*Riddick v. Maurer*, 730 F. App'x 34, 37 (2d Cir. 2018) (holding that the incarcerated plaintiff

---

[3] Although I concluded in the initial review order that the complaint plausibly pled the existence of a
sufficiently serious deprivation of medical care, that ruling is not dispositive here.  *See* Doc. No. 22**,** at 6–7.  As
detailed above, the standard of review governing motions for a temporary restraining order and preliminary
injunction is considerably more stringent than the standard governing complaints.  Moreover, I may consider
evidence beyond the four corners of the complaint for the purposes of the instant motion.

failed to clearly establish that the defendants were deliberately indifferent when they scheduled

appointments with prison medical staff after the plaintiff complained of back pain).  Moreover, at

the time of the medical requests in question, Henderson was already receiving treatment for his

lower back pain; he had an active prescription for Gabapentin and was taking such medication.

*See* Doc. No. 1, at ¶¶ 5–6; Doc. No. 14, at 19.  Further, prior to his October 8, 2020 appointment,

Henderson was advised that Tylenol, Motrin, and a muscle rub cream were available at the

commissary and, as Dr. Freston opined, treatment for spinal osteoarthritis may include Tylenol

and Motrin.

Henderson was also offered acetaminophen and Motrin for pain management at the

October 8, 2020 appointment, but declined the medication.  And on November 13, 2020, Dr.

Feder ordered an x-ray of Henderson's lumbar spine, which, according to Dr. Freston,

demonstrated only nominal degenerative progression of Henderson's spinal osteoarthritis.

Approximately two months later, on January 28, 2021, Henderson had another appointment with

a nurse, who prescribed Lidoderm patches and counseled Henderson on the importance of

stretching, maintaining flexibility, and using warm compresses.  According to Dr. Freston, the

treatment that Henderson was prescribed was appropriate.

Considering the medical care that Henderson received for his back pain, Henderson has

failed to sufficiently establish that he was deprived of adequate medical treatment in violation of

the Eighth Amendment.  Instead, his claims appear to constitute mere disagreement over the

treatment provided, and it is well-established that such a dispute does not give rise to a

constitutional claim.  *See Riddick,* 730 F. App'x at 37–38 (holding that a prisoner's claim that the

defendants were deliberately indifferent to his medical needs by denying him MRIs or x-rays

likely fails, because the claim amounted to a dispute over the appropriate treatment and the

record suggested that the treatment the prisoner received was adequate).  It is, moreover, settled

law that incarcerated plaintiffs do not have a constitutional right to the medical treatment of their

choice.  *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a

prisoner does not have the right to choose his medical treatment as long as he receives adequate

treatment . . . . [T]he essential test is one of medical necessity and not one simply of

desirability.") (cleaned up).

 For similar reasons, Henderson has failed to sufficiently establish the subjective

component of the deliberate indifference test—that is, that Lozada or Phillips knew of and

disregarded an excessive risk to his health and safety.  Because the record at hand does not

adequately demonstrate that the medical treatment he received was constitutionally deficient,

Henderson has not sufficiently shown that the defendants failed to take reasonable measures to

mitigate any risk of serious harm.

 For all the foregoing reasons, Henderson has not established a clear likelihood of success

on the merits on his deliberate indifference claims to justify preliminary injunctive relief.

## IV. Conclusion

 In sum, Henderson has failed to establish that the extraordinary remedy of an injunction

is warranted.  His motion for a temporary restraining order and preliminary injunction (doc. no.

4) is therefore **denied**.

 So ordered.

Dated at Bridgeport, Connecticut, this 19th day of April 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
